**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ENRIQUE SANTIAGO MORALES,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

**CASE NO.** 5:26-CV-04576-CTS

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

On August 13, 2026, Petitioner Enrique Santiago Morales ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally id.*) The Petition names as Respondents Markwayne Mullin, Secretary, DHS; Rodney S. Scott, Commissioner, United States Custom and Border Protection ("CBP"); Jaime Rios, Acting Field Office Director for Los Angeles, ICE; Eddy Wang, Special Agent in Charge for Los Angeles, Homeland Security Investigations, ICE; Warden

of Adelanto ICE Process Center; and Does 1 through 10 ("Respondents"). (*Id*. at 1.[1]) On August 20, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 7.) On August 24, 2026, Petitioner filed his Reply. (Rep., ECF No. 8.) For the reasons set forth below, the GRANTS the Petition and ORDERS that Petitioner be released immediately.

## II. BACKGROUND

The Petition[2] alleges that Petitioner is a native and citizen of Mexico who has resided continuously in the United States for decades and established significant ties in Southern California since at least 2006, as demonstrated by the following evidence: tax records, residential records, employment and payroll documentation, banking records, financial obligations, vehicle records, family records, educational records concerning his daughter, photographs spanning many years, and declarations and letters from individuals familiar with Petitioner's character and community ties. (Pet. ¶¶ 51–52, 59–62.) On June 21, 2026, immigration officers were conducting a targeted enforcement operation directed at a different individual, for whom an administrative warrant had been issued. (*Id.* at ¶ 65; *id.* at Ex. A.) After that operation proved unsuccessful, the officers broadened their investigative activity to vehicles in the surrounding area and saw a vehicle that they believed belonged to yet another individual, who was reported to be subject to an expedited removal order. (*Id.* at ¶¶ 67–70.) After Petitioner, who was neither the target of the enforcement operation nor the individual subject to the expedited removal, drove

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

[2] The Petition attaches the following documents as Exhibit A: IJ Curtis White's order denying bond, dated August 5, 2026; Form I-213, Record of Deportable/Inadmissible Alien; Notice to Appear, dated June 21, 2026; Notice of Custody Redetermination in Immigration Proceedings, dated July 29, 2026. (Pet., Ex. A, ECF No. 1-2.)

away in the vehicle the officers had flagged, the officers followed the vehicle, initiated a traffic stop, questioned Petitioner about his immigration status, and arrested Petitioner without a warrant. (*Id.* at ¶¶ 72–81.) Following his detention, Petitioner sought release from immigration custody and an Immigration Judge ("IJ") held a hearing, where Petitioner submitted extensive evidence of his community ties. (*Id.* at ¶¶ 82–89.) The IJ found that Petitioner did not carry the applicable burden of establishing that he did not present a flight risk and denied his request for release. (*Id.* at ¶¶ 82–95.)

The Answer neither disputes these allegations, nor provides additional facts or exhibits. (*See generally* Ans.) On August 31, 2026, pursuant to a Court order (ECF No. 9), Respondents filed a copy of the transcript of Petitioner's August 5, 2026 bond hearing ("Transcript") (Trans., ECF No. 10).

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on three grounds: (1) Fourth Amendment – Unreasonable Seizure Without Individualized Reasonable Suspicion (Pet. ¶¶ 218–233); (2) Unlawful Warrantless Arrest in Violation of 8 U.S.C. § 1357(a)(2), Applicable Regulations, and the Fifth Amendment (*id.* at ¶¶ 234–246); and (3) Fifth Amendment – Continued Detention Without a Constitutionally Adequate Individualized Custody Determination (*id.* at ¶¶ 247–275). He seeks the following: declaratory relief; immediate release; an order enjoining Respondents from continuing Petitioner's detention, absent a new and independent lawful basis for custody; alternatively, an order that Respondents provide Petitioner with a custody hearing where Respondents bear the burden to establish by clear and convincing evidence that Petitioner presents a substantial risk of nonappearance sufficient to justify detention; and attorneys' fees under the Equal Access to Justice Act ("EAJA"). (*Id.* at 86–89.)

///

## IV. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

## V. DISCUSSION

Count Three of the Petition challenges the constitutional sufficiency of the IJ's August 5, 2026 bond determination. (Pet. ¶¶ 247–275.) Respondents assert

that the Court does not have jurisdiction to review the IJ's decision and that "prudential exhaustion to the [Board of Immigration Appeals] is required to challenge the IJ's bond decision." (Ans. 5.)

### A. **The Court Has Jurisdiction To Review the Immigration Judge's August 5, 2026 Denial of Bond for Abuse of Discretion.**

The Petition is brought pursuant to 28 U.S.C. § 2241, which extends the writ of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A challenge to a noncitizen's detention is an attack on that detainee's present physical confinement, and thus falls within the "core of habeas" as a cognizable habeas petition. *Doe*, 109 F.4th at 1194; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (noting that the court would have jurisdiction under § 2241 to consider errors of law in immigration proceedings, including due process violations). Thus, courts in this district have found that habeas jurisdiction exists over petitions filed by noncitizens in the custody of ICE. *E.g.*, *Karangolian v. Marin*, No. 5:26-CV-594-WLH (RAO), 2026 WL 1082312, at *2 (C.D. Cal. Apr. 16, 2026) ("Petitioner seeks review of the legality of his detention. . . . Accordingly, as other courts in this Circuit have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241.").

The Court notes that Respondents have not asserted that 8 U.S.C. § 1226(e) bars this Court from reviewing the Petition's claims. Because the Court has an obligation to ensure it has jurisdiction, however, it notes that "8 U.S.C. § 1226(e) does not preclude judicial review of constitutional claims or questions of law." *Heboud v. Blanche*, No. 5:26-CV-03484-KS, 2026 WL 2494985, at *2 (C.D. Cal. Aug. 24, 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024)). And "[b]ecause the determination of whether a noncitizen is dangerous or a risk of flight for immigration-detention purposes involves a mixed question of law and

fact, it is therefore reviewable in habeas proceedings." *Id.* (citing *Martinez*, 124 F.4th at 779).

**B. <u>Petitioner Was Not Required to Exhaust His Administrative Remedies.</u>**

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, *unless exhaustion is excused*." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (emphasis added). Exhaustion of claims on habeas review under Section 2241 may be excused because "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

Courts "may require prudential exhaustion when: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Exhaustion may be waived when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.,* 637 F.2d 685, 688 (9th Cir. 1981)). Petitioner bears the burden of "demonstrat[ing] grounds for excusing the exhaustion requirement." *Leonardo*, 646 F.3d at 1161; *see also Jacinto Chacon v. Mullin*, No. 5:26-CV-03294-RAO, 2026 WL 2127177, at *4 (C.D. Cal. July 21, 2026) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these

*Laing* factors applies." (quoting *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025))).

Respondents contend that Petitioner has failed to exhaust his administrative remedies because he has bypassed appeal to the Board of Immigration Appeals ("BIA"). (Ans. 5–12.) The Court finds, however, that the doctrine of prudential exhaustion does not bar Petitioner's claims. As another court in this district has recently stated:

> Upon consideration of the *Puga* factors, the Court finds that prudential exhaustion is not required in this case. First, the BIA's expertise in immigration bond decisions is not necessary to decide the legal questions at issue here—whether Petitioner's bond hearing was constitutionally adequate. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 U.S. Dist. LEXIS 79044, at *9 (W.D. Wash. Apr. 10, 2026) (finding the first *Puga* factor weighed against requiring prudential exhaustion because the BIA's expertise was not needed to address the issue of "whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight risk"). Second, "waiver of the prudential exhaustion requirement will not 'encourage the deliberate bypass of the administrative scheme,'" and "[a]ny risk of deliberate bypass of administrative procedures is further reduced by the fact that district courts will only have jurisdiction in the 'rare case[s]' where future plaintiffs allege a 'colorable' constitutional or legal challenge to the government's procedures." *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (quoting *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Lastly, where the Petition presents constitutional due process concerns, "the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano*, 2026 U.S. Dist. LEXIS 79044, at *10. Therefore, Petitioner was not required to exhaust his administrative remedies before proceeding with his Petition in this Court.

*Heboud*, 2026 WL 2494985, at *3. The Court reaches the same conclusion here, and finds that Petitioner was not required to exhaust his administrative remedies before pursuing his constitutional claims in this Court.

### C. **The Immigration Judge's August 5, 2026 Denial of Bond Was an Abuse of Discretion.**

Noncitizens subject to the detention regime of 8 U.S.C. § 1226(a) are entitled to "extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.[3] The parties here agree that Petitioner has received an initial bond hearing, at which the IJ placed the burden on Petitioner to show, by a preponderance of the evidence, that he was neither a flight risk nor a danger. (Pet. Ex. A; Ans. 4.) At the bond hearing, the government indicated that it was not aware of any criminal history for Petitioner and did not argue that Petitioner posed a risk of danger, instead focusing on the risk of flight. (Trans. 6.) The IJ found that Petitioner did not meet his burden to establish that he is not a flight risk and therefore denied bond. (Pet., Ex. A.)

---

[3] Respondents contend that the Petition should be denied because detention during ongoing removal proceedings is permissible under 8 U.S.C. § 1226(a). (Ans. 2–3.) Although the detention of some noncitizens under 8 U.S.C. § 1226(a) during the pendency of their removal proceedings may be authorized, detention under 8 U.S.C. § 1226(a) is not mandatory, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) ("[D]etention under § 1226(a) is discretionary, allowing the release of aliens on bond pending their removal proceedings."), and the determination of whether a *particular* noncitizen's detention during the pendency of removal proceedings is permissible requires additional analysis.

An IJ's determination that a detainee poses a danger to the community or a flight risk is a mixed question of law and fact that may be reviewed for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (finding that *Wilkinson v. Garland*, 601 U.S. 209 (2024), "compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question"); *see Gonzalez Reyes v. Rios*, No. EDCV 26-3830 JGB (DFM), 2026 WL 2190830, at *3 n.1 (C.D. Cal. July 28, 2026) ("Although *Martinez* involved a dangerousness determination, the same rationale applies to detention decisions based on flight risk."); *Padilla Jimenez v. Mullin*, No. 5:26-CV-03624-MBK, 2026 WL 2076496, at *3 (C.D. Cal. July 15, 2026) (stating that "the same rationale applies to detention decisions based on flight risk").

Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). As one Court in this district recently summarized in finding that an IJ abused his discretion by finding a similar habeas petitioner to be a flight risk:

> An immigration [court] "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

*Gonzalez Reyes*, 2026 WL 2190830, at *4.

The Ninth Circuit has explained that, when determining "whether an alien is a danger to the community or a risk of flight," an IJ may consider the following factors:

///

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783; *see also Heboud*, 2026 WL 2494985, at *4 (listing same nine factors and citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). While an IJ has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative," *Martinez*, 124 F.4th at 784, the Ninth Circuit has also explained that an immigration agency "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision]." *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotations omitted).

At Petitioner's bond hearing, the IJ stated that "the court is going to find in line with the BIA precedent, that there is an unacceptably high flight risk in this case." (Trans. 9.) In support of this finding, the IJ pointed to "a prior voluntary return on top of the successful unlawful entry," and stated that, "[t]here is not only, as this record reflects, a very speculative nature of relief, [but] also a speculative prospect to the respondent complying with any removal order." (*Id.*) In his order, he stated that he had "considered all risk factors, including the surreptitious entry into the United States, even after a prior voluntary return, and overly speculative pathway to relief." (Pet. Ex. A, ECF No. 1-2, at 2.)

///

The Court finds that the IJ abused his discretion in finding Petitioner a flight risk. At the hearing, the government introduced two items into evidence, a copy of the Notice to Appear and a copy of the Form I-213 regarding Petitioner's arrest. (*Id.* at 3.) The IJ then referenced the fact that the I-213 indicated that Petitioner was reported to have voluntarily returned to Mexico on January 31, 2000. (*Id.* at 9.) Petitioner submitted fourteen exhibits into evidence, none of which the IJ acknowledged or discussed. (*Id.* at 2, 9.) From Petitioner's counsel's argument at the hearing, it appears that this evidence showed that Petitioner had resided in the United States since the early 2000s; that he had two children, ages 23 and 21, who were U.S. citizens; that he had a partner, stable employment, and a fixed address; that he had filed tax returns for the last five years; that he was seeking withholding of removal; that his adult daughter, who was attending university, was willing to be his sponsor; that letters of support from his family and friends showed his good moral character; and that he had an established life in the United States that he would continue to maintain. (*Id.* at 5–8.) Petitioner's counsel also argued that, if the IJ were to find that Petitioner was a flight risk, that risk could be mitigated with a higher bond amount and alternatives to detention. (*Id.* at 7.)

The evidence presented at the hearing therefore showed that Petitioner must have entered the United States at least once prior to January 31, 2000, the date on which he was recorded as having voluntarily returned to Mexico, and then made at least one more unlawful entry sometime in the early 2000s, as he had evidently been living in this country since that time. No evidence was presented to show any immigration law violations in more than 25 years. A decades-old history of simply entering the United States without permission, or trying to, has been held to be "legally insufficient to establish a current flight risk that is unmanageable by release on bond." *Gonzalez Reyes*, 2026 WL 2190830, at *5 (granting petitioner's application for a temporary restraining order on the grounds that IJ abused discretion in denying bond based in part on finding that multiple attempts to enter

the United States in the late 1990s made petitioner a flight risk). "[T]he IJ failed to identify why conduct that occurred approximately 25 years ago (or more) suggests Petitioner would be motivated to flee and otherwise not appear at future immigration proceedings." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *see also Herrera Ramirez v. Blanche*, No. 5:26-CV-03938-DTB, 2026 WL 2395217, at *10 (C.D. Cal. Aug. 17, 2026) ("As to the finding of 'surreptitious entry into the United States,' the Immigration Judge failed to explain how Petitioner's entry into the United States, 'surreptitious' or otherwise, over ten years ago evidences that he is a flight risk."). As one court put it in evaluating an IJ's denial of bond to a habeas petitioner with a similar background, "[t]he IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee. Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Soriano*, 830 F. Supp. 3d at 1080.

The IJ also relied on the fact that the proposed immigration relief sought by Petitioner is "speculative." (Pet. Ex. A 2; Trans. 9.) Indeed, in reviewing the Transcript, the IJ appears to have felt compelled to follow BIA precedent, that, as discussed at the hearing, he interpreted as essentially mandating a finding that there is an unacceptably high flight risk any time a noncitizen's right to immigration relief is speculative. (*See* Trans. 9.) This was an abuse of discretion. "Although an immigration judge may consider the likelihood of receiving relief based on specific facts presented in a particular case, the judge here did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case." *Gonzalez Reyes*, 2026 WL 2190830, at *5 (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805); *see also Soriano*, 830 F. Supp. 3d at 1081 (finding that, while it might be rational to infer "that a noncitizen who

likely faces inevitable removal may be less likely to appear at future removal hearings . . . based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case"). The *Soriano* court summarized the facts in that case as follows:

> Petitioner has been living in the United States approximately 25 years, has lived at the same address for the past 20 years, has been employed with the same employer for 25 years, appears to be in a stable relationship with his wife, has dependent United States citizen children, one of whom is approximately 13 years of age with vision issues requiring regular medical evaluations and school accommodations, has regularly volunteered in his community (*id*. at 101), and has no criminal history whatsoever.

*Soriano*, 830 F. Supp. 3d at 1081. The *Soriano* court found that the IJ had abused his discretion in denying the petitioner's bond request, noting, after summarizing the facts as set forth above, that "[t]he IJ provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Id.*

In addition, given the extensive evidence presented by Petitioner of his longstanding ties to the community, the IJ abused his discretion in ordering detention "without 'engag[ing] in any meaningful analysis of potential alternatives to detention, such as a GPS ankle monitor, home detention, enrollment in the Intensive Supervision Appearance Program ("ISAP"), or other reporting requirements as part of the flight risk calculus.'" *Heboud*, 2026 WL 2494985, at *6 (quoting *Felix v. United States DOJ*, No. 2:26-cv-03304-HDV-AYP, 2026 U.S. Dist. LEXIS 133657, at *3 (C.D. Cal. June 10, 2026)); *see also Alvarez Felix v. United States Dep't of Just.*, No. 2:26-CV-03304-HDV-AYP, 2026 WL 1719418, at *2 (C.D. Cal. June 10, 2026) ("Based upon the review of the bond hearing, the

Court concludes that due process considerations have not been met as no serious consideration was given to alternatives to detention, a necessary component of the due process analysis in the context of bond determinations.").

The Court therefore finds that, to the extent the IJ exercised his discretion, he abused that discretion in finding that Petitioner failed to meet his burden to show that he was not a flight risk. This determination was both "arbitrary, irrational, or contrary to law," *Pleitez-Lopez*, 935 F.3d at 719 (quotation omitted), and "fail[ed] to state its reasons and show proper consideration of all factors when weighing equities and denying relief," *An Na Peng*, 673 F.3d at 1253 (quotation omitted). The evidence presented was that Petitioner had lived in the United States for decades, had a partner and two U.S. citizen children, one of whom was willing to be his sponsor, had stable employment and a fixed address, and had the support of family and friends. (Trans. 5–8.) Further, no evidence was presented that Petitioner had ever failed to appear at any court hearings, had any criminal record, had ever tried to flee prosecution or otherwise escape from authorities, or had any history of immigration violations other than entering or attempting to enter the country without permission more than 25 years ago. *See Martinez*, 124 F.4th at 783 (listing factors). Here, as in *Soriano*, it was an abuse of discretion to conclude that Petitioner was so likely to abandon his family and flee immigration authorities rather than appear in immigration court to pursue claims for relief from removal proceedings that no bond or alternatives to detention could suffice to ensure his appearance—especially in light of the failure even to discuss any such alternatives. *Soriano*, 830 F. Supp. 3d at 1080–81.

**D. <u>The Appropriate Remedy Is Release.</u>**

Having found that the IJ's decision was an abuse of discretion, the Court turns to the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d

917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Upon determining that an [immigration judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Gonzalez Reyes*, 2026 WL 2190830, at *6 (quoting *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases)).

Here, the Court finds that the appropriate remedy is release. *See Gonzalez Reyes*, 2026 WL 2190830, at *7 (finding that the appropriate remedy was immediate release from custody). As the *Soriano* court stated, "[u]nder the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 830 F. Supp. 3d at 1081; *see also Gonzalez Reyes*, 2026 WL 2190830, at *7 (ordering Respondents to immediately release petitioner "subject only to narrowly tailored conditions of release no more restrictive than necessary").

In addition, the Court notes that Petitioner seeks "reasonable attorneys' fees, litigation expenses, and costs to the extent permitted by law." (Pet. 89.) Petitioner may seek fees and costs after judgment has been entered as provided by this Court's Local Rules and any applicable statute authorizing such an award.[4]

///

///

///

---

[4] In light of the relief granted on Count Three, the Court declines to address Petitioner's other claims.

## VI. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING Count Three of the Petition, dismissing the remaining claims as moot in light of the relief granted on Count Three, and dismissing the Petition without prejudice; and
2. Respondents MUST RELEASE **Petitioner Enrique Santiago Morales (A 221-462-750)** from custody within 24 hours of entry of this Order, subject only to reasonable, noncustodial conditions of release designed to ensure his appearance at future immigration proceedings.

DATED: September 11, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE